LIPSCOMB v. SEEGERS.

1. In action to recover the damages stipulated in a bond, which was given under the requirements of a statute, conditioned that the defendant would safely keep the convicts leased to him from the State Penitentiary, and if they escaped through negligence of any kind, then to pay the state therefor $50 per annum, &c., the burden of proof is upon the plaintiff to show that the escape of the convicts was through the negligence of defendant.

2. Under the terms of the contract the plaintiff's right of action was grounded upon a negative allegation, hence he must prove it.

3. The convicts having been leased under the contract required by the state, the contractor's liability is fixed by such contract, and cannot, therefore, be measured by the relations of the parties, or a supposed public policy.

4. The act of 1882 declaring the escape of leased convicts to be *prima facie* evidence of negligence on the part of the lessee, cannot affect this case, as the contract was made and the convicts escaped prior to the passage of that act.

5. The Circuit judge ruled that he would receive evidence to show negligence by defendant during the time the convicts were in his possession, but not at other times. *Held*, that in this there was no error.

Before FRASER, J., Richland, April, 1884.

The case is sufficiently stated in the opinion of this court.

*Messrs. Pope & Haskell*, for appellant.

*Messrs. Clark & Muller*, contra.

March 26, 1885. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This case was once before in this court, and is reported 19 S. C., 426. It will there be seen that the action was brought by the Superintendent of the State Penitentiary against John C. Seegers for a sum of money alleged to be due the state by him for the escape of certain convicts hired to him in the year 1879. The claim originally was for the escape of five convicts by name. The former case disposed of that of Spry, but ordered a new trial as to the claim for the escape of four, Williams, Robinson, Talbert, and Blakely.

There was no question as to the fact of escape while in the service of Seegers—that was admitted in the answer—but whether they had been allowed to escape negligently, and as to the burden of proof upon that point. The plaintiff, Lipscomb, was examined as a witness, and being asked "if he knew anything of the general management of the convicts on the Seegers farm," the defendant objected, and the judge sustained the objection, ruling that he would permit any question going to show negligence between the dates of receiving these convicts and

their escapes, but not questions going to show negligence at other times. (Plaintiff excepted.) After other evidence was offered upon the point of negligence, the case was submitted to the jury. The plaintiff made several requests to charge which were refused. Under the charge of the judge the jury found for the defendant, and the plaintiff gave notice of appeal to this court "on account of the rulings of the presiding judge during the trial, and from his refusals to charge as requested at the trial."

The first and second requests to charge were substantially the same: "That this action is upon a contract; that the damage for its infraction is fixed and liquidated; that the contract of Seegers was that he would safely keep the convicts, and when plaintiff proved the escape the defendant was at once put to his defence to prove that he had safely kept, or that he could show facts that would excuse the escape." The judge refused to charge this request, but did charge as follows: "That while the mere escape is not *prima facie* evidence of negligence, the jury have the whole case before them. It is for them to say whether there has been an escape; whether this has been for the want of a proper guard, or from negligence of the guard, which was entrusted with them, or whether there was anything else shown in the case which was a want of due care of the convicts, and from which want of due care, if any, their escape was due."

Was this error? The real question is, Upon whom was the *onus* of proving negligence? In order to have a clear view, let us go back a little and ascertain the precise condition of things. The former case decided that this was an action on a bond, assumed to have been given by the defendant, Seegers, under the act of 1877, corresponding in its terms to the requirements of that act, that is to say, on a bond conditioned "for the safe-keeping of the convicts named, and if they should escape through negli-- gence of any kind, then to pay the state therefor the sum of $50 per annum," &c. Considering the action upon a bond containing such covenants, upon whom was the *onus* of proving negligence? The plaintiff alleged that the convicts escaped, and that they were allowed to escape though negligence, and the undoubted rule is, that he who affirms must prove, and as a consequence the

plaintiff must prove his allegations or fail. In an ordinary action for the non-performance of covenants the plaintiff must assign breaches and prove them.

But it is suggested that this case should constitute an exception to the general rule for several reasons; and first, that it is against one of the fundamental rules of evidence that a party should be required to prove a negative; that as the defendant held the affirmative of the issue as to due care, and the facts upon the subject were peculiarly within his knowledge, he should have been required to prove it after an escape was shown. Whether the allegation was in its nature affirmative or negative depended very largely upon the form in which it was made. If stated in the words of the act "through negligence," it would seem to have been affirmative in form as well as in substance. But if negative in form, that did not dispense with the necessity resting upon the plaintiff to prove it, as it was one of those cases "in which the plaintiff grounds his right of action upon a negative allegation." 1 *Greenl. Evid.*, § 78. See *Latimer* v. *Latimer, ante,* 257, where this court has lately discussed the whole subject. If the words "through negligence" had been omitted, and the action had been simply for a breach of the covenant to safely keep the convicts, the rule of evidence as contended would have been otherwise. But as these words were in the bond, it became part of plaintiff's case to prove them. 1 *Whart. Evid.* (2d edit.), § 362.

But it is urged that the case should be an exception to the general rule, as to the *onus* of proof, on account of the peculiar relations of the parties; that the superintendent was the custodian, jailor, of the convicts, and in case he were sued, the fact of escape itself would be taken as *prima facie* evidence of negligence; and that Seegers, under the contract, simply took the place of the superintendent as to the custody and safe-keeping of the convicts, and the same rule should be applied to him when he is sued. This is ingenious, but it does not seem to us sound. There is little doubt that as to convicts the main purpose of the state is their safe-keeping, and anything outside of that is subsidiary. It is true that this is the primary and controlling duty of the superintendent as the officer and agent of the state. And it may also be true that a contractor, in hiring convicts, takes in

some sense the place of the superintendent. But it must not be overlooked that a voluntary contractor may not be an official, with duties and liabilities definitely prescribed; and, therefore, in allowing convicts to be farmed out, the state undertook to fix the liabilities of a contractor by requiring him to give a bond of a certain character; which, as it seems to us, is the law of the case, and must be interpreted, like all other bonds, according to its terms. The state herself thereby fixed the measure of a contractor's liability, and it is now too late to fall back upon the relations of the parties or a supposed public policy.

It seems that the legislature took this view of the matter, and in 1882 thought it necessary and wise to amend the law by declaring that "the fact of escape shall be taken as *prima facie* evidence of negligence on the part of the contractor," &c. This amendment of the law, however, was not passed until after 1879, when the transactions under consideration took place, and we cannot think that it was merely declaratory of a rule of evidence and applicable retrospectively to this case. When a contract is made, the law then in force becomes part of the contract. The court is not inclined to give laws a retroactive effect. The rule is that statutes are not to be construed retrospectively or so as to have a retroactive effect, unless it shall clearly appear that it was so intended by the legislature. *Ex parte Graham*, 13 *Rich.*, 277; *Nichols* v. *Briggs*, 18 *S. C.*, 473. Such clear intent is not apparent in the amendment of 1882. We see no error in the rulings of the Circuit judge as to the *onus* of proof.

The only other alleged error was the exclusion of testimony as to the general management of the convicts on the Seegers farm. The judge ruled that he "would permit any questions going to show negligence between the dates of receiving the convicts and their escapes, but not questions going to show negligence at other times." Was this error? The precise point in issue was whether the convicts, Williams, Robinson, Talbert, and Blakely, escaped from Seegers' farm "through negligence." All evidence directly on the issue, of course, had to relate to the time between their delivery to and their escape from Seegers, and everything not embraced in that time must be considered as collateral. As a general rule, evidence that is collateral is irrelevant, but not

always. The words are not identical in import. There are cases in which collateral facts are properly admitted as having a bearing upon the direct issue. Mr. Wharton says: "Relevancy is that which conduces to the truth of a pertinent hypothesis, which, if sustained, would logically influence the issue." 1 *Whart. Evid.* (2d edit.), § 20. Whether the collateral facts proposed to be proved have such bearing upon the issue must to a large extent be decided by the judge who tried the case; and the same learned author gives us some general principles as to when collateral matters should or should not be admitted. He says: "A party's habits in doing business cannot ordinarily be put in evidence to show that he did a certain thing in a particular way. Ordinarily when a party is sued for damages flowing from negligence imputed to him, it is irrelevant, for reasons already given, to prove against him other disconnected though similar negligent acts. Thus in an action against a bailor for the loss of property entrusted to him, evidence of independent acts of negligence not connected with the loss is inadmissible," &c. 1 *Whart. Evid.* (2d edit.), § 40; *Parker* v. *Portland Publishing Company*, 69 *Me.*, 178 (31 *Am. Rep.*, 262). We fully appreciate the difficulty of offering direct evidence of negligence as to the particular convicts who escaped, but that arose, in great part at least, from the nature of the issue imposed by the act, and we cannot say that the judge committed error of law in refusing to receive the testimony as to general management on the Seegers farm.

The judgment of this court is that the judgment of the Circuit Court be affirmed.